Andrew Gerber (AG 0779)
Ilya Kushnirsky (IK 3899)

KUSHNIRSKY GERBER PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 882-1320
*Attorneys for NLI Holdings, LLC d/b/a National Lampoon*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————     :
NLI HOLDINGS, LLC                              :      Case No. 20-cv-9292
d/b/a NATIONAL LAMPOON                 :
                                                              :      **COMPLAINT**
                               Plaintiff,            :
          v.                                              :
                                                              :
EVAN SHAPIRO, JILL SHAPIRO,        :
ESHAP LLC a/k/a ESHAPTV/ESHAP LLC, and  :
LGA PRODUCTIONS, LLC                   :
                                                              :      **JURY TRIAL DEMANDED**
                               Defendants.        :
———————————————————————————     :

Plaintiff NLI Holdings, LLC d/b/a National Lampoon ("NLI" or "Plaintiff"), by their

attorneys Kushnirsky Gerber PLLC, for its complaint against defendants Evan Shapiro, Jill

Shapiro, eshap LLC a/k/a eshapTV/eshap LLC ("eshap LLC"), and LGA Productions, LLC

(collectively, "Defendants"), asserts claims under the Racketeer Influenced and Corrupt

Organizations Act (RICO), as well as claims for breach of duty of loyalty and fiduciary duty,

tortious interference with contract, tortious interference with business relations, unfair

competition, aiding and abetting breach of fiduciary duty and loyalty, conversion, fraud, and aiding

and abetting fraud.  NLI alleges as follows:

**NATURE OF THE ACTION**

1.      NLI d/b/a National Lampoon is a well-known comedy production company that currently produces live shows, television programs, feature films, podcasts and other humor and dramatic content.

2.      In March 2019, NLI hired Defendant Evan Shapiro to serve as the President of NLI and executed a Memorandum of Understanding ("MOU") that addressed his employment and his related obligations and responsibilities.  Under the MOU, Evan Shapiro and his company eshap LLC agreed to assign all rights in and to their entertainment-related projects including assignment of all intellectual property thereto.  Evan Shapiro and eshap also agreed to work exclusively in NLI's interest for the term of the agreement.  Evan Shapiro thereafter and began his employment as President of NLI.

3.      NLI recently discovered that Evan Shapiro, while functioning as President of NLI, had been fraudulently funneling monies owed to NLI into his own pockets using eshap LLC and a newly created entity, Defendant LGA Productions, LLC with the assistance of his wife, Jill Shapiro.  Evan Shapiro has also been surreptitiously re-directing opportunities meant for NLI to eshap LLC and LGA Productions, LLC and, using those entities, has been exploiting projects and intellectual property owned by NLI for his own benefit.

4.      Evan Shapiro, in concert with his wife Jill Shapiro and their two companies eshap LLC and LGA Productions, LLC, flagrantly violated his fiduciary duties and his duty of loyalty to NLI and did so in his senior role as President of NLI.  Evan Shapiro acted with the utmost bad faith, willfully looting NLI, seizing company intellectual property, and intentionally re-directing funds and business deals from NLI to his own competing companies while functioning as President of NLI.

5.      NLI brings this action to reclaim monies and intellectual property that Defendants stole as part of this fraudulent scheme and prevent Defendants from further damaging NLI through their unlawful conduct.

**PARTIES, JURISDICTION, AND VENUE**

6.      This is an action for damages arising out of a carefully constructed fraudulent scheme created by Evan Shapiro using Jill Shapiro and defendant entities to steal from NLI and hide the unlawful conduct from NLI.

7.      At the times relevant to the events giving rise to this action, the Shapiro individual defendants were residents of New York.  Defendant eshap LLC is a New York limited liability company located in New York.  Defendant LGA Productions, LLC is a California limited liability company located in New York.

8.      The events giving rise to this action occurred in New York and in this District.

9.      The Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4 and N.Y. C.P.L.R. §§ 301.

10.      Plaintiff NLI Holdings, LLC d/b/a National Lampoon is a Delaware limited liability company located in Pennsylvania.  NLI is a Manager-Managed LLC.

11.      This action arises under 18 U.S.C. § 1962(c) for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), as well as claims for breach of duty of loyalty and fiduciary duty, tortious interference with contract, tortious interference with business relations, unfair competition, aiding and abetting breach of fiduciary duty and loyalty, conversion, fraud, and aiding and abetting fraud.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1964(c), and 28 U.S.C. § 1376(a).

12.      The Court has personal jurisdiction over the individual defendants because they residents of and domiciled in New York while engaging in the unlawful activities alleged herein.

The Court has personal jurisdiction over the corporate defendants because they are all located in this District, do systematic business in New York and in this District; maintain their headquarters in this District; derive substantial revenue from services rendered in New York and this District; expect or reasonably should expect their unlawful conduct to have consequences in New York and this District; and derive substantial revenue from interstate commerce.

13.     Venue is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTS

### I.     Evan Shapiro Employment with NLI

14.     Pursuant to the MOU effective March 1, 2019, Evan Shapiro was to become the President of NLI and would receive a salary of $352,917 for the remainder of 2019 and $465,850 for 2020.  Evan Shapiro would also be eligible for discretionary cash and equity bonuses.

15.     The term of Evan Shapiro's employment under the MOU would run from March 1, 2019 to December 31, 2020.

16.     The MOU also includes the formation of a new entity NewCo LLC ("NewCo") that would be 99% owned by NLI with the remaining 1% owned by NLI member Kevin Frakes, giving NLI effective 100% control and ownership of NewCo.

17.     Under the MOU, Evan Shapiro and eshap LLC were to assign 100% of their respective right, title, and interest in and to 100% of their entertainment related projects to NewCo. This assignment explicitly included assignment of all intellectual property, assignment of all contracts and related agreements associated with the entertainment projects, including those associated with the assigned intellectual property, and assignment of all ownership, fees, profit participations and all other entitlements associated with the entertainment projects, including the

intellectual property thereof.  This was crystal clear: Evan Shapiro and eshap LLC were to assign all of their entertainment contracts, entitlements, and intellectual property to NewCo, which was owned and controlled by NLI.

18.     Evan Shapiro and eshap LLC would thereafter own none of the entertainment contracts, entitlements, and intellectual property in these projects.  NLI would effectively own all of these projects.

19.     NLI, Evan Shapiro, and eshap LLC all executed the MOU and began performing under the MOU and fulfilling their respective obligations thereunder.  NLI's acquisition of all Evan Shapiro and eshap LLC assets was consummated soon thereafter, as was repeatedly confirmed by Evan Shapiro.  The former Evan Shapiro and eshap LLC projects were then referred to internally and externally as NLI projects.

20.     In December 2019, Evan Shapiro was made a Manager of NLI, a Manager-Managed LLC, and took on even greater responsibilities and duties with respect to the company.

21.     NLI has been consistently up to date and in good standing as to all payments and entitlements owed to Evan Shapiro in his capacity as President.

II.     **Evan Shapiro and Jill Shapiro Enact Their Fraudulent Scheme**

**A.  The Shapiros Create Unauthorized Entity to Funnel Money from NLI**

22.     In early 2020, with a potential new investment incoming and NewCo not yet created, NLI decided that the creation of NewCo was unnecessary especially given that it would effectively be a wholly-owned subsidiary of NLI and that NLI could instead take on its rights and obligations directly.

23.     Evan Shapiro had no authority or authorization from NLI to enter into agreements or execute agreements on behalf of NLI without the explicit consent of NLI members Kevin Frakes and Raj Singh.  Kevin Frakes and Raj Singh repeatedly conveyed this to Evan Shapiro.

24.     Evan Shapiro had no authority or authorization from NLI to create NLI subsidiary or affiliated entities without the explicit consent of NLI members Kevin Frakes and Raj Singh. Kevin Frakes and Raj Singh repeatedly conveyed this to Evan Shapiro.

25.     Without authorization from NLI, the Shapiros formed Defendant LGA Productions, LLC.  Without any authority to do so, the Shapiros instructed NLI corporate counsel to form LGA Productions, LLC as a single-member LLC with Evan Shapiro as the sole member.  This was done in direct contravention of explicit instructions from Mr. Singh to form the new entity as a wholly-owned subsidiary of NLI.

26.     Jill Shapiro served as bookkeeper for LGA Productions, LLC and eshap LLC and assisted Evan Shapiro in managing and controlling these entities.

27.     The Shapiros concealed their formation of LGA Productions, LLC from NLI and used the Shapiro's New York home address as the corporate address.  The Shapiros set up a corporate bank account for LGA Productions, LLC in California to avoid having to share the corporate operating agreement with the bank, which would leave a paper trail and potentially trigger suspicion.  None of this was disclosed to NLI and was in fact carefully hidden from NLI.

28.     Evan Shapiro consistently removed Mr. Singh and Mr. Frakes from email discussions with NLI counsel in connection with the formation of LGA Productions, LLC in order to conceal its formation and improper ownership.  Evan Shapiro did so in order to fraudulently conceal the fact that he gave himself sole ownership and control of an entity that was supposed to be wholly owned by NLI.

29.     Without any permission or authority to do so, Evan Shapiro even hired his own corporate counsel for NLI and used them to secretly enact his fraudulent deals that channeled properties and funds to his LGA Productions, LLC entity.  Using his own separate corporate

counsel also allowed Evan Shapiro to fraudulently conceal his illegal conduct from NLI and its managers and members.

30.     Evan Shapiro did so while acting as President of NLI with clear fiduciary duties to NLI.  Evan Shapiro succeeded in this fraudulent concealment as NLI did not learn about the improper LGA Productions, LLC formation and ownership until only recently.

31.     Evan Shapiro went to great lengths to fraudulently conceal his illegal scheme. Plaintiff NLI's investigation into Defendant's unlawful conduct is still ongoing and NLI believes that there is still a significant amount of unlawful conduct yet to be discovered.  NLI intends to amend this Complaint to add additional allegations and claims as its investigation continues.

**B.     The Shapiros Steal NLI Funds from Quibi Settlement**

32.     Having created LGA Productions, LLC for the purposes of misdirecting NLI funds into their own pockets, the Shapiros then successfully carried out their fraudulent plan.

33.     In 2019, NLI executed a licensing deal with Quibi Holdings, LLC ("Quibi") for production of a short-form series called "Let's Go Atsuko."

34.     Quibi backed out of the "Let's Go Atsuko" deal soon after agreeing to it, and NLI and Quibi began discussing potential resolution of the dispute and how to address the funds that Quibi now owed to NLI.

35.     Without any permission or authority from NLI, Evan Shapiro finalized a settlement with Quibi on terms that NLI would never have approved.   Evan Shapiro knew this and intentionally hid his unauthorized Quibi negotiations from NLI members Kevin Frakes and Raj Singh.

36.     Evan Shapiro secretly finalized his unauthorized Quibi negotiations and allowed Quibi to settle NLI's potential claims for $350,000, of which $86,712 had already been paid to NLI, with the balance of $263,288 to be paid to NLI.  This was a small fraction of the total funds

Quibi owed to NLI.  Had NLI known about these negotiations, NLI would never have agreed to such terms.

37.     As is now clear, Evan Shapiro pushed through the secret Quibi settlement so that he could steal the settlement funds from NLI.  After finalizing and signing the Quibi settlement without authority from NLI and hiding the settlement deal from NLI, Evan Shapiro then fraudulently altered the deal at the last minute to replace NLI with his own LGA Productions, LLC entity as the payee for the settlement funds.

38.     Having altered the terms of the Quibi settlement, with the assistance of Jill Shapiro, Evan Shapiro successfully re-directed the $263,288 balance intended for NLI to his own LGA Productions, LLC entity, channeling the funds out of state to his LGA Productions, LLC bank account in California.  Evan Shapiro also executed both sides of the assignment of rights, signing on behalf of NLI to assign NLI's rights to LGA Productions, LLC, also signing on behalf of LGA Productions, LLC to receive the fraudulent transfer.  As President and Manager of NLI, Evan Shapiro was willfully signing over NLI properties and funds to his own entity and intentionally hiding this fraud from the other NLI members and managers.

39.     Quibi counsel even flagged this issue in an email exchange on June 17, 2020, noting that it was unheard of to send payment to any entity other than the licensing party, ie. NLI.  Evan Shapiro had previously instructed NLI staff to revise the settlement agreement and make his LGA Productions, LLC company the recipient of the $263,288 balance instead of NLI.  Evan Shapiro had no authority to change the terms of the agreement with Quibi and certainly had no authority to re-direct NLI funds to his own company.  This was an intentional fraudulent act to steal $263,288 in funds intended for NLI.  Evan Shapiro thereafter hid this fraudulent conduct from NLI.  To date, NLI has not received its $263,288 balance from Quibi and the funds remain under the Shapiros' control.

40.     Evan Shapiro intentionally removed NLI members Kevin Frakes and Raj Singh from email discussions with Quibi about this in order to hide this theft from NLI.  Evan Shapiro was again successful in this fraudulent concealment, as NLI did not learn of the finalized settlement or the theft of funds until recently when it reviewed Evan Shapiro's emails on its server.

41.     As recently as September 2020, Evan Shapiro has acknowledged that he is in control of the NLI funds from Quibi and is willfully withholding those funds from NLI.

**C.      The Shapiros Steal NLI Funds by Issuing Unauthorized Payments Using LGA Productions, LLC and eshap LLC**

42.     NLI and Evan Shapiro had agreed that additional fees and expenses incurred by Evan Shapiro and eshap LLC would be covered by a designated revenue corridor.

43.     Despite this agreement, Jill Shapiro issued several invoices in 2020 to NLI for Evan Shapiro and eshap LLC's fees and expenses.  Without authority to do so, Evan Shapiro approved or directed staff to approve payments of over $38,0000 on those invoices without authority to do so, effectively opening another fraudulent money channel from NLI to his bank account in order to further siphon funds from NLI.

44.     The Shapiros again fraudulently concealed this scheme from NLI and NLI to date still does not know the full extent of this theft.

**D.      Shapiro Steals "Blame the Hero" Property from NLI**

45.     After Evan Shapiro had joined the company, NLI began developing its "Blame the Hero" web series using NLI financing and assets.

46.     Despite "Blame the Hero" being an NLI property and despite Evan Shapiro serving as the President of NLI, Evan Shapiro nonetheless surreptitiously continued developing "Blame the Hero" as his own project.  Even while shopping "Blame the Hero" for NLI, Evan Shapiro listed

"Blame the Hero" as an eshap LLC property and listing himself as the Producer on behalf of eshap LLC.

47.     Evan Shapiro eventually reached a deal with Comedy Central Digital to produce "Blame the Hero" with a budget of $135,000 and did so listing it as an eshap LLC project.  He did so in flagrant breach of his fiduciary duties as President of NLI, knowing that it was, in reality, an NLI property.

48.      Yet again, Evan Shapiro used his LGA Productions, LLC entity to carry out his fraud.  Without authority or authorization from NLI, Evan Shapiro entered into an agreement with Comedy Central Digital for "Blame the Hero."  Despite "Blame the Hero" belonging to NLI, Evan Shapiro made his LGA Productions, LLC entity - not NLI – party to the Comedy Central Digital agreement.

49.     Evan Shapiro also made his LGA Productions, LLC entity the payee on the "Blame the Hero" agreement with Comedy Central Digital.  To date, he has already received at least $67,000 in funds from Comedy Central Digital for "Blame the Hero."  Despite "Blame the Hero" being an NLI-owned property, NLI was entirely unaware that Evan Shapiro had entered into this deal and NLI has not seen a single penny from this deal for its own property.

50.     Evan Shapiro fraudulently concealed his secret dealings with Comedy Central Digital and NLI only recently discovered this facet of his fraudulent scheme.

    **E.     Shapiro Steals "Radio Hour" Property from NLI and Self-Deals with His Forever Dog Company**

51.     "Radio Hour" is a podcast and video series created and funded by NLI prior to the arrival of Evan Shapiro.

52.     While developing "Radio Hour" for NLI, Evan Shapiro improperly erected a partnership with Forever Dog Productions, a podcast production company of which Shapiro is an

owner and board member. Without notifying NLI of the full extent of his conflict of interest, Evan Shapiro enacted an elaborate self-dealing scheme with Forever Dog Productions.

53. On top of this, despite "Radio Hour" being an NLI property and despite Evan Shapiro serving as the President of NLI, Evan Shapiro again used his LGA Productions, LLC entity to carry out his fraud. Evan Shapiro entered into several distribution and advertising deals for "Radio Hour" using his LGA Productions, LLC entity as party to the transactions instead of NLI.

54. Yet again, Evan Shapiro also made his LGA Productions, LLC entity the payee on these deals and funds from these deals are flowing to his LGA Productions, LLC entity rather than NLI.

### F. Shapiro Steals "Grimm Legacy" Property from NLI

55. "Grimm Legacy" is an anthology film project currently in development at Disney+.

56. Pursuant to the MOU, Shapiro and eshap LLC assigned all rights in "Grimm Legacy" to NLI in March 2019.

57. Despite "Grimm Legacy" now being an NLI property and despite Evan Shapiro serving as the President of NLI, Evan Shapiro notified Disney and related production company partners that "Grimm Legacy" would be run by one of his own entities and no longer be handled by NLI and has attempted to unlawfully seize ownership and control of the "Grimm Legacy" property.

### G. Shapiro Steals "Roast of Your Teenage Self" Property from NLI

58. "Roast of Your Teenage Self" is a podcast project originated and developed entirely in-house at NLI.

59. Despite "Roast of Your Teenage Self" being an NLI property and despite Evan Shapiro serving as the President of NLI, Evan Shapiro has unlawfully seized ownership and control

of the "Roast of Your Teenage Self" property and has shopped and sold it as his own.  It is currently in development with All Things Comedy and NLI has been unlawfully excluded from a project that it rightfully owns.

**H.    Shapiro Steals "Debate Club" and "Stupid Heavy" Properties from NLI**

60.    "Debate Club" and "Stupid Heavy" are podcasts that were originated and developed entirely in-house at NLI.

61.    Despite "Debate Club" and "Stupid Heavy" being NLI properties and despite Evan Shapiro serving as the President of NLI, Evan Shapiro has been shopping "Debate Club" and "Stupid Heavy" as belonging to eshap LLC and has attempted to unlawfully seize ownership and control of these properties.   "Debate Club" and "Stupid Heavy" are now in development with KAST as eshap LLC productions despite being rightfully owned by NLI.

**I.    Shapiro Steals "Lemmings" Property from NLI**

62.    "Lemmings" is a relaunch of a classic National Lampoon live show.

63.    NLI has been developing "Lemmings" for years and had planned for its launch in early 2020.

64.    As President of NLI and pursuant to the MOU, any contributions to "Lemmings" made by Evan Shapiro are part of the "Lemmings" property and owned by NLI.

65.    Despite this, Evan Shapiro has claimed "Lemmings" as an eshap LLC project and has claimed ownership in at least part of "Lemmings."

**J.    Shapiro Continues Developing Eshap LLC Projects Outside NLI and Steals "The Bright Side" from NLI**

66.    Despite assigning all rights to eshap LLC projects to NLI and agreeing to work exclusively for NLI pursuant to the MOU, Evan Shapiro continued to secretly develop eshap LLC

projects apart from NLI, including "The Bright Side" project, without NLI's knowledge of involvement.

67.     Leveraging his position at NLI and using his NLI email address, Evan Shapiro secured deals on several legacy eshap LLC projects, including "The Bright Side" with Clix, Inc. d/b/a ClixTV in August 2020.

68.     "The Bright Side" was explicitly shopped with Clix, Inc. as a National Lampoon property with National Lampoon branding.  Clix, Inc. representatives even stated that they needed "Evan's approval in an email with his title and email at National Lampoon" which Shapiro provided.  Evan Shapiro also separately confirmed that Clix, Inc. could use National Lampoon branding with the project.

69.     And yet again, consistent with his *modus operandi*, once the parties had agreed on terms, Evan Shapiro then informed Clix, Inc. that the deal would actually be done through eshap LLC for "various reasons" and fraudulently inserted eshap LLC into the agreement in the place of NLI.

**K.     Evan Shapiro Attempts to Transfer NLI Assets to Yellow Film & TV**

70.     Having successfully carried out his fraudulent scheme with NLI, Evan Shapiro decided to move on to his next victim.

71.     Evan Shapiro recently offered to transfer eshap LLC properties – all of which are owned by NLI pursuant to the MOU – to the Finnish production company Yellow Film & TV ("Yellow").  As part of this transfer, Evan Shapiro had negotiated employment with Yellow, anticipating his departure from NLI after NLI uncovered his extensive theft and fraudulent scheme there.

72.     Evan Shapiro presumably intends to enact a similar fraudulent scheme with Yellow, his next anticipated victim.

### III.   RICO Violations

73.     Based upon all of the above, Evan Shapiro has violated 18 U.S.C. § 1962(c), and NLI has been injured thereby. A statement of NLI's § 1962(c) RICO claim follows.

#### (i)     Culpable Individual

74.     Defendant Evan Shapiro is the culpable individual who managed and conducted the affairs of various separate business enterprises, including but not limited to eshap LLC and LGA Productions, LLC.

#### (ii)    The Enterprises

75.     The enterprises involved in the RICO violations at issue include eshap LLC and LGA Productions, LLC.  Evan Shapiro has managed and conducted the affairs of these enterprises both separately and in a coordinated manner, for the purpose of producing a range of media content.  Eshap LLC existed as its own separate production company before Evan Shapiro was hired by NLI and continued separately operating even after his hire, operated by Evan Shapiro and Jill Shapiro.  LGA Productions, LLC was created after Evan Shapiro began working for NLI and operated as a separate production company that was wholly owned by Evan Shapiro and operated by Evan Shapiro and Jill Shapiro. Thus, the business entities constitute individual enterprises in and of themselves, and together they constitute an association-in-fact managed and operated by Evan Shapiro.

#### (iii)   Effect on Interstate Commerce

76.     Evan Shapiro's illegal scheme affected interstate commerce (i) via his improper use of email and the internet to perpetrate fraud; and (ii) via fraudulent deals orchestrated as between entities in various states.

#### (iv)    The Pattern of Racketeering

77.     Evan Shapiro has managed and operated the affairs of the enterprises via a pattern of racketeering acts that have been both related and continuous.

(a)     **Relatedness**

78.     Evan Shapiro's *modus operandi* of illegal conduct involves, among other things, similar purposes, methods, and results. On multiple occasions, using his position within the NLI organization, Evan Shapiro tricked third-parties into revising deals intended for NLI to change the party from NLI to Shapiro's wholly-owned entity, whereby Shapiro could then surreptitiously channel funds and deals meant for NLI to himself and his wholly-owned entities. Evan Shapiro was also able to fraudulently induce NLI employees into approving and carrying out his scheme even though he had no authority to do so. He was also able to fraudulently conceal this scheme from NLI members Kevin Frakes and Raj Singh.

79.     During the period relevant to this action, while serving as President of NLI, Evan Shapiro knew and intended that (1) funds intended for NLI would be surreptitiously funneled into his own company and his own pockets; (2) funds belonging to NLI would be distributed to him without permission; and (3) projects and intellectual property owned by NLI would be transferred to his own companies.

80.     Evan Shapiro made numerous fraudulent misrepresentations in connection with this scheme. For example, in connection with the Quibi settlement, Evan Shapiro fraudulently instructed Quibi over email to change the payee from NLI to LGA Productions, LLC, his wholly-owned subsidiary. Evan Shapiro thereby fraudulently re-directed the wire of funds meant for NLI bank accounts to his own controlled bank accounts.

81.     In similar fashion, Evan Shapiro swapped NLI out as party to several production and distribution deals involving NLI properties and inserted his own entities in NLI's place. In doing so, Evan Shapiro was again able to fraudulently re-direct wire transfers meant for NLI to his

own controlled bank accounts.  He was also able to fraudulently transfer ownership of intellectual property and deals to his own controlled entities away from NLI by fraudulently instructing third-parties to use eshap LLC and LGA Productions, LLC in the contracts instead of NLI.

82.     Evan Shapiro's fraudulent conduct made in connection with this scheme was designed both to channel NLI funds and property from NLI to Evan Shapiro, to deceive third-parties and NLI employees, agents, and attorneys that this was authorized by NLI, and conceal this conduct from NLI members Kevin Frakes and Raj Singh.

### (b)     Closed-Ended Continuity

83.     Evan Shapiro's scheme satisfies the requirements for closed-ended continuity, as it has extended over at least an 18-month period.

84.     As described above and below, this course of conduct has involved a complex scheme and a variety of predicate acts targeted at NLI, third parties contracting with NLI including Quibi and Comedy Central Digital, and employees and agents of NLI.

### (c)     Open-Ended Continuity

85.     Evan Shapiro's scheme also satisfies the requirements for open-ended continuity, as his activities pose a continuing threat of ongoing criminal activity.

86.     First, a significant sum of stolen funds and intellectual property remain in Evan Shapiro's possession and control.  Second, while perpetrating this fraudulent scheme, Evan Shapiro used at two separate production company enterprises to carry out his unlawful conduct. He can simply start this scheme again wherever he pleases. And indeed, third, Evan Shapiro has already attempted to start this scheme again with Yellow Film & TV.  This fraudulent conduct creates an actual and ongoing threat to any other production companies who may still be enticed by the prospect of working with Evan Shapiro.

87.     Evan Shapiro can readily continue his pattern of fraudulent conduct with new companies, new schemes, and new victims in the United States and around the world.

**(v)**     **Predicate Acts**

    **(a)**     **Fraudulent Acts**

88.     As detailed throughout this Complaint, Defendant has committed numerous discrete acts of wire fraud, in violation of 18 U.S.C. § 1343.  These acts include:

a.      In early June 2020, Evan Shapiro fraudulently altered the Settlement Agreement with Quibi to change the payee from NLI to LGA Productions, LLC, his wholly-owned entity.  Evan Shapiro transmitted this fraudulently altered document to Quibi and caused the wire transfer intended for NLI to instead be routed to his LGA Productions, LLC account.  Over email, Quibi questioned this suspicious maneuver and, over email, Evan Shapiro directed NLI counsel to confirm it.

b.      In text conversations between Evan Shapiro and Kevin Frakes on July 22, 2020 and July 23, 2020, Mr. Frakes asked Evan Shapiro about the status of the Quibi negotiations, believing that NLI was still discussing the terms of potential settlement with Quibi, when Evan Shapiro had already closed the settlement deal with Quibi and stolen the settlement funds.  In response, Evan Shapiro lied to Mr. Frakes and stated "My attorney and I have been able to get them to move some off their lowball.  I would say very likely before the end of August."   Evan Shapiro made this statement knowing that he had already closed the Quibi settlement, altered the Quibi agreement to funnel funds to LGA Productions, LLC, and that NLI would not receive any funds from Quibi.

c.      In August and September 2020, Evan Shapiro stole NLI funds by issuing and approving fraudulent reimbursement statements to NLI and distributing funds to himself to which he was not entitled.

      d.     On several occasions in 2020, Evan Shapiro fraudulently altered production deals with third parties to change the from NLI deals to eshap LLC and LGA Production, LLC deals.  When confronted about the change in party, Evan Shapiro lied to third parties about the arrangement.

      e.     Evan Shapiro repeatedly removed NLI members Raj Singh and Kevin Frakes from key email discussions in order to fraudulently conceal his criminal scheme.

89.     The fraudulent conduct and fraudulent statements made by Evan Shapiro were all part of a scheme to defraud NLI and third-party distributors and production companies as alleged herein; this was done with a clear intent to defraud these businesses and their principals, including NLI; they were made with reasonable foreseeability that the internet and email would be used; and, as alleged herein, the internet and email were in fact used to perpetrate these frauds.

90.     All of these fraudulent statements by Evan Shapiro were made willfully and with actual knowledge of their illegality.

91.     All of these fraudulent actions by Evan Shapiro were made willfully and with actual knowledge of their illegality.

92.     By fraudulently converting NLI funds and redirecting NLI contracts and business opportunities to himself and his own entities, Evan Shapiro breached the fiduciary duties he owed to NLI as its President.

      **(vi)**     **Standing and Injury**

93.     Plaintiff NLI has standing to allege violations of 18 U.S.C. § 1962(c).  NLI is an entity that has sustained injury to its business and property by reason of specific acts of fraud committed by Evan Shapiro.  In particular, NLI has been injured by Evan Shapiro's fraudulent conduct that redirected substantial funds belonging to NLI to Evan Shapiro and entities owned and controlled by Evan Shapiro. NLI has also been injured by Evan Shapiro's fraudulent alteration of

NLI contracts and business deals that redirected such deals and resulting revenues from NLI to Evan Shapiro and entities owned and controlled by Evan Shapiro.  NLI has also been injured by Evan Shapiro's fraudulent misrepresentations regarding the anticipated payments to NLI from third parties.

94.     But for Evan Shapiro's fraudulent conduct in connection with this scheme, NLI would have received the funds it was owed and would have maintained its contracts and business relations with its third party partners, and therefore would not have been injured.  Further, NLI's monetary injuries were a direct and foreseeable consequence of Evan Shapiro's fraudulent activity in connection with eshap LLC and LGA Productions, LLC and his relationship with NLI.

95.     NLI and its principals relied to their detriment and were injured by these violations of 18 U.S.C. § 1962(c).  Specifically, NLI and its principals were defrauded out of funds owed to them by third-parties, defrauded out of intellectual property and business contracts belonging to NLI, defrauded out of revenue streams belonging to NLI, and/or NLI cash that was stolen by Evan Shapiro.

## FIRST CLAIM FOR RELIEF
## CIVIL RICO – 18 U.S.C. § 1962(c)
### (Against Evan Shapiro, Eshap LLC, and LGA Productions, LLC)

96.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 95 above, and incorporates them herein by this reference.

97.     Defendants Eshap LLC and LGA Productions, LLC are enterprises engaged in, and whose activities affect, interstate commerce.  Defendant Evan Shapiro owns, manages, and operates these enterprises.

98.     Defendant Evan Shapiro agreed to and did conduct and participate in the conduct of these enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding, *inter alia*, Plaintiff NLI. The racketeering activities as they related to

Plaintiffs included the acts alleged herein regarding fraudulent conduct and misrepresentations made by Evan Shapiro.

99.     Pursuant to and in furtherance of his fraudulent scheme, Defendants Evan Shapiro, Eshap LLC, and LGA Productions, LLC engaged in multiple related acts of fraud and wire fraud. These misrepresentations, made via the internet and email, included, as alleged herein, fraudulent statements made by Evan Shapiro to third-parties and to NLI in various digital and written communications with NLI principals.

100.    These acts set forth herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

101.    Defendants Evan Shapiro, eshap LLC, and LGA Productions, LLC have directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

102.    As a direct and proximate result of these Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff NLI has been injured in its business and property in that it has been defrauded out of funds owed to it by third-parties and defrauded out of intellectual property and contracts belonging to NLI.

## SECOND CLAIM FOR RELIEF
## BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY
### (Against Evan Shapiro)

103.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 102 above, and incorporates them herein by this reference.

104.    Evan Shapiro was employed by NLI as President, a position of unquestionable expectation of trust and confidence.

105.    Evan Shapiro had a fiduciary duty to NLI in this leadership role with the company.

106.     During his employment and given his executive position within the company, Evan Shapiro owed a fiduciary duty and duty of loyalty to NLI.

107.     By virtue of these duties, Evan Shapiro was prohibited from acting in a disloyal manner or in any way inconsistent with that trust relationship.

108.     By virtue of his fiduciary role, Evan Shapiro owed a fiduciary duty to NLI.

109.     Evan Shapiro was bound not to harm NLI's business and/or benefit himself by soliciting NLI's clients and prospective clients.

110.     Evan Shapiro was bound not to harm NLI's business and/or benefit himself by re-directing funds intended for NLI to himself.

111.     Evan Shapiro was bound not to harm NLI's business and/or benefit himself by re-directing business opportunities intended for NLI to himself.

112.     Evan Shapiro was bound not to intentionally divert business and clients away from NLI while he was employed by NLI.

113.     Notwithstanding these obligations and duties, and in violation thereof, Evan Shapiro has engaged or has intended to engage in the aforesaid disloyal and untrustworthy conduct.

114.     Notwithstanding these obligations and duties, and in violation thereof, Evan Shapiro has engaged or has intended to engage in the aforesaid conduct in violation of his fiduciary duty to NLI.

115.     As a consequence of Evan Shapiro's foregoing intentional breaches of his duty of loyalty and fiduciary duty to NLI, NLI has been injured, for which it is entitled to recover compensatory damages and interest in an amount as proof at trial may show, including but not limited to lost revenue and punitive damages.

116.    As a consequence of Evan Shapiro's unfaithful service towards NLI, NLI is entitled to recover all compensation paid to Evan Shapiro during his employment with NLI.

### THIRD CLAIM FOR RELIEF
### AIDING AND ABETTING BREACH OF DUTY OF LOYALTY
### AND FIDUCIARY DUTY
### (Against Jill Shapiro)

117.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 116 above, and incorporates them herein by this reference.

118.    Defendant Jill Shapiro controlled and operated Defendants eshap LLC and LGA Productions, LLC along with Defendant Evan Shapiro.

119.    Through the MOU, Plaintiff NLI owned all entertainment properties and contracts of eshap LLC.

120.    By virtue of his fiduciary role with NLI, Evan Shapiro owed a fiduciary duty to NLI.

121.    Evan Shapiro has engaged in conduct in violation of his fiduciary duty to NLI.

122.    Defendant Jill Shapiro knowingly and substantially assisted and acted in concert with Evan Shapiro in effecting this breach.

123.    As a direct result of this breach that was aided and abetted by Jill Shapiro, NLI has been injured, for which it is entitled to recover compensatory damages and interest in an amount as proof at trial may show, including but not limited to lost revenue, recovery of all compensation paid to Evan Shapiro, and punitive damages.

### FOURTH CLAIM FOR RELIEF
### WIRE FRAUD - 18 U.S.C. §1343
### (Against Evan Shapiro)

124.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 123 above, and incorporates them herein by this reference.

125.     Defendant Evan Shapiro knowingly and intentionally participated in a scheme to defraud NLI.  Evan Shapiro used wire and electronic transmissions in furtherance of this scheme.

126.     Evan Shapiro knowingly made false representations with the intent of inducing NLI and NLI Partners to rely on such statements.

127.     NLI and NLI Partners did in fact rely on such false statements to their detriment.

128.     NLI has been injured as a result of Evan Shapiro's fraud and is entitled to compensatory and punitive damages in connection with this fraudulent conduct.

## FIFTH CLAIM FOR RELIEF
## AIDING AND ABETTING FRAUD
### (Against Jill Shapiro)

129.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 128 above, and incorporates them herein by this reference.

130.     As alleged herein, Evan Shapiro has engaged in a wide range of fraudulent conduct as part of a scheme using entities owned and controlled by him and Jill Shapiro.

131.     Defendant Jill Shapiro knowingly and substantially assisted and acted in concert with Evan Shapiro in perpetrating this fraud.

132.     As a direct result of the fraud that was aided and abetted by Jill Shapiro, NLI has been injured, for which it is entitled to recover compensatory damages and interest in an amount as proof at trial may show.

## SIXTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against All Defendants)

133.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 132 above, and incorporates them herein by this reference.

134.     NLI has contracts, including exclusive contracts, with talent and third-party production companies, distributors, and other media and entertainment entities ("NLI Partners").

135.     Defendants knew of these contractual relationships.

136.     Defendants intended to induce and did induce such NLI Partners to breach their contractual obligations to NLI.  This conduct allowed Defendants to reap the benefits of such breaches.

137.     As a direct and proximate result of Defendants' interference, such NLI Partners have breached their agreements with NLI, and NLI has suffered, and will continue to suffer, general and special damages, including the loss of these contractually-bound partners and the revenue resulting therefrom.

138.     NLI seeks compensation for all damages and losses proximately caused by the acts of interference and wrongful conduct of Defendants in an amount as proof at trial may show. NLI is also seeking injunctive relief restraining Defendants and those acting in concert with them as prayed below.

**SEVENTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(Against All Defendants)**

139.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 138 above, and incorporates them herein by this reference.

140.     NLI maintains critical contractual and business relationships with its NLI Partners that would have resulted in an economic benefit to NLI.

141.     Defendants knew of these relationships.

142.     NLI had a reasonable expectation of maintaining these business relationships.

143.     Defendants intentionally disrupted these relationships and engaged in wrongful conduct in order to interfere with these relationships.

144.     As a direct and proximate result of Defendants' acts of interference, the relationships between NLI and the NLI Partners were disrupted, and NLI has suffered, and will

continue to suffer, general and special damages, including the loss of clients, loss of business, loss of business relationships, and loss of good will.

145.    NLI seeks compensation for all damages and losses proximately caused by the acts of interference and wrongful conduct of Defendants in an amount as proof at trial may show.

146.    Further, NLI seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

**EIGHTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION**
**(Against All Defendants)**

147.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 146 above, and incorporates them herein by this reference.

148.    Defendants, individually and collectively, have engaged in unfair competition by, among other things, unlawfully and fraudulently altering existing deals and business relationships with NLI Partners in order to solicit and to divert NLI Partners and contracts with NLI Partners to eshap LLC and LGA Productions, LLC.

149.    As a consequence of the Defendants' unfair competition, NLI has been injured, for which it is entitled to recover compensatory damages and interest in an amount as proof at trial may show, including but not limited to lost revenue and punitive damages.

**NINTH CLAIM FOR RELIEF**
**CONVERSION**
**(Against All Defendants)**

150.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 149 above, and incorporate them herein by this reference.

151.    NLI had legal ownership over funds it was owed by third parties.

152.    NLI had legal ownership of certain media properties and the related contracts, intellectual property, and revenue streams relating thereto.

153.    Defendants have exercised unauthorized dominion over such funds and properties to the exclusion of NLI's rights therein.

154.    As a consequence of Defendants' actions, NLI has been deprived of such funds and properties.

155.    NLI seeks compensation for all damages and losses proximately caused by such conversion, including but not limited to the return of such funds and properties to NLI's control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment as follows:

1.    Awarding Plaintiff compensatory damages in an amount exceeding $3,000,000, with the exact total to be determined at trial.

2.    Awarding Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c);

3.    Awarding Plaintiff costs of this action, including attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

4.    Awarding Plaintiff the return of all compensation paid to Evan Shapiro;

5.    Enjoining Defendants from any further interference with NLI contracts or business relations;

6.    Enjoining Defendants from exerting any further control over NLI properties;

7.    Awarding Plaintiff prejudgment interest on all damages awarded by this Court;

8.    Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated:    New York, New York         Respectfully Submitted,
            November 5, 2020

                                          KUSHNIRSKY GERBER PLLC

                                          By: _____
                                          Andrew Gerber (AG 0779)
                                          andrew@kgfirm.com
                                          27 Union Square West, Suite 301
                                          New York, NY 10003
                                          (212) 882-1320
                                          *Attorneys for Plaintiff*
                                          *NLI Holdings, LLC d/b/a National*
                                          *Lampoon*